# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT C. CARNICK,

        Plaintiff,                      No. 05-CV-73622

v.                                        Hon. Gerald E. Rosen

UNITED STATES OF AMERICA
DEPARTMENT OF TREASURY
INTERNAL REVENUE SERVICE,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM DETERMINATION CONCERNING COLLECTION ACTION

### I. Introduction

Plaintiff Robert C. Carnick commenced this suit in this Court on September 21, 2005, challenging a determination by the Internal Revenue Service ("IRS") that he is liable for a Trust Fund Recovery Penalty ("TFRP") assessed against him for over $45,000.00.

On March 27, 2006, Defendant United States of America filed a motion requesting that the challenged IRS determination be affirmed, on the ground that the IRS appeals officer did not abuse his discretion in issuing the Notice of Determination Concerning Collection Action that is the subject of this suit. On May 1, 2006, Plaintiff responded to this motion by filing an answer, requesting that the motion to affirm be denied. Defendant then filed a reply brief on May 5, 2006 in further support of its motion. Having reviewed the parties' submissions and the record as a whole, the Court finds that it is appropriate to resolve this matter "on the briefs." *See* Eastern District Local Rule 7.1(e)(2). For the reasons set forth below, the Court concludes that

Defendant's motion should be granted.

## II. Factual and Procedural Background

In 1999, the IRS assessed a Trust Fund Recovery Penalty ("TFRP") against Plaintiff Robert C. Carnick, as a "responsible person" for Copco Door Company, for unpaid trust fund taxes during the period ending September 30, 1999.  On September 2, 2004, the IRS sent Carnick a Final Notice of Intent to Levy and Notice of Your Rights to a Hearing for unpaid trust fund taxes, notifying Carnick of the agency's intent to collect the TFRP assessment and advising him of his right to request a collection due process ("CDP") hearing with the IRS Appeals Office.

On September 14, 2004, the IRS received a timely request from Carnick for a CDP hearing with an IRS appeals officer.  In the request, Carnick claimed he was not a "responsible person" within the meaning of the Internal Revenue Code and that he was not given the appropriate notice to contest the assessment.[1]  Carnick did, however, indicate that he would submit an offer in compromise as a collection alternative during the CDP hearing.  Carnick was subsequently contacted by Lawrence Phillips, a Settlement Officer for the IRS, located in Grand Rapids, Michigan.  Although Carnick requested an in-person conference, Phillips mentioned that an informal telephone conference was the only option because no IRS appeals offices were located near Carnick's residence.  Phillips originally scheduled the telephone conference for January 18, 2005, but Carnick's attorney requested that the conference be rescheduled because he had not yet gathered and reviewed all of the pertinent information.  Phillips agreed to reschedule the telephone conference for January 27, 2005.  Again, Carnick's attorney called

---

[1] These issues are not before the Court since neither Carnick nor Defendant have addressed the issues in their briefs.  Furthermore, the Notice of Determination states that Carnick signed for the letter proposing the Trust Fund Recovery Penalty on October 14, 1999. (Defendant's Motion, Ex. 1)

Phillips and requested that the hearing be postponed because he had received new information and claimed that he needed additional time to review it. Again, Phillips agreed to reschedule the telephone conference for February 2, 2005.

Finally, on February 1, 2005, Carnick sent an offer in compromise to Phillips in preparation for the telephone conference. In this initial offer in compromise, Carnick calculated a proposed offer of $6,300.00 payable within 90 days by subtracting his actual monthly living expenses from his monthly income. On February 2, 2005, Phillips conducted an informal telephone conference with Carnick and his attorney to discuss the offer in compromise. Phillips was unable to reach a final decision at this time because neither Carnick nor his attorney provided sufficient documentation supporting the offer in compromise. A communication breakdown apparently occurred between Carnick and his attorney.

Neither Carnick nor his attorney had any other questions during the telephone conference, and they requested several days to gather the information that Phillips needed to reach a decision. During the months of March and April of 2005, Phillips reviewed the offer in compromise and Carnick's personal finances, eventually concluding that Carnick had the ability to pay over $52,000.00. In a series of correspondence between Phillips and Carnick's attorney, Phillips requested additional information to substantiate Carnick's calculation of actual living expenses. Some, but not all, of this information was produced. Without sufficient information to justify Carnick's claimed actual living expenses, Phillips based his determination on the difference between Carnick's monthly income and national standard expenses.[2]

---

[2] Carnick and the Settlement Officer both reached the same amount for Total Income: $6,437.00 per month. The dispute is over the monthly expense calculations, specifically the national standard expense. National standard expenses are taken from IRS Form 433-A.6 and include clothing and clothing services, food, housekeeping supplies, personal care products and services, and miscellaneous expenses. *See In re Bannourah*, 201 B.R. 954, 955 (Bankr. S.D. Ind. 1996).

The following are Carnick's calculations: $2,500 for National Standard; $1,173 for housing and

Dissatisfied with this amount, Carnick thereafter amended his offer in compromise by increasing the offer to $12,000. Phillips reviewed the second offer and reduced the amount he believed Carnick could pay to $45,216.00. Phillips indicated that unless and until Carnick offered to pay roughly $45,000.00, he could not recommend that the IRS accept the offer. Phillips also concluded that Carnick did not have any economic hardship that prevented him from paying close to $45,000.00. In July 2005, Carnick's attorney requested another two weeks to produce documentation to substantiate Carnick's actual living expenses. This documentation was never produced. Finally, on August 25, 2005, Phillips issued a Notice of Determination Concerning Collection Action rejecting Carnick's offer in compromise and reiterating a tax liability of $45,216.00. The Notice of Determination stated that relief could not be granted because Carnick did not "propose an acceptable collection alternative." (Defendant's Motion, Ex. 1)

Carnick then initiated the present action on September 21, 2005, challenging the IRS Notice of Determination Concerning Collection Action. Carnick does not contest the underlying tax liability but believes the IRS acted unreasonably in rejecting his offers in compromise. Specifically, Carnick argues that Phillips's Notice of Determination rejecting the offers in compromise was an abuse of discretion because the IRS failed to consider the increased offer submitted by Carnick, failed to allow Carnick to use actual expenses instead of national standard expenses, disallowed certain actual expenses, failed to consider Carnick's poor credit history, and

---

utilities; $548 for ownership transportation; $590 for operating transportation; $617 for taxes on income; $25 for health care; $21 for health/life/dental (fringe benefits); $550 for child going to special school; $92 for representation; and $79 for student loans.

      The Settlement Officer's calculations are as follows: $1564 for National Standard; $971 for housing and utilities; $475 for ownership transportation; $500 for operating transportation; $1245 for taxes on income; $100 for health care; $43 for health/life/dental (fringe benefits); $458 for child going to special school; $66 for representation; and $73 for student loans.

failed to consider Carnick's current financial hardship. Defendant then filed the present motion, requesting that this Court affirm the Notice of Determination Concerning Collection Action.

### III. Analysis

Defendant argues that the Settlement Officer, Lawrence Phillips, did not abuse his discretion when he rejected Carnick's offers in compromise. The Court agrees with Defendant.

Before the IRS can levy on a taxpayer's rights or property, the taxpayer is entitled to a collection due process hearing conducted by an IRS employee with no prior involvement in the taxpayer's case. *See generally* 26 U.S.C. § 6330. During the CDP hearing, the taxpayer can raise "any relevant issue relating to unpaid tax or the proposed levy," including "challenges to the appropriateness of collection actions," and "offers of collection alternatives, which may include . . . an offer-in-compromise." *See* §6330(c)(2)(A). The IRS employee then must determine whether all the legal and procedural requirements of any applicable laws have been met, whether the taxpayer has proposed any reasonable collection alternatives, and whether the proposed levy activity fairly balances the need for the efficient collection of taxes with the concern that the collection activity be no more intrusive than necessary. *See* § 6330(c)(3). After the IRS issues a Notice of Determination stating its findings, the taxpayer has 30 days to seek judicial review of that determination. *See* § 6330(d)(1).

The Sixth Circuit recently addressed the standard of review in cases such as this one, where a taxpayer is challenging an IRS Notice of Determination. In *Living Care Alternatives of Utica v. United States*, 411 F.3d 621 (6th Cir. 2005), the Sixth Circuit stated that "it is proper to review the IRS Appeals Office *de novo* with respect to decisions about the underlying tax liability and for abuse of discretion with respect to all other decisions . . . ." *Id*. at 625. Significantly, the Sixth Circuit commented that district courts, under the abuse of discretion

standard, should be more deferential when reviewing determinations made by the IRS than when reviewing determinations made by other administrative agencies. *Id*. The Sixth Circuit also noted that in providing for CDP hearings on what is ordinarily a scant record, Congress "must have been contemplating a more deferential review of these tax appeals than of more formal agency decisions." *Id*.

Here, the parties agree that Carnick failed to challenge the underlying tax liability during the informal telephone CDP conference. Instead, Carnick made several offers in compromise that were rejected by IRS Settlement Officer Phillips. Carnick is now challenging only the Settlement Officer's Notice of Determination Concerning Collection Action rejecting those offers in compromise. In his complaint, Carnick initially requested this Court to "redetermine an appropriate offer in compromise based on Plaintiff's actual expenses and ability to pay." (Plaintiff's Complaint at 4). The Court will not conduct such an analysis. *Living Care Alternatives of Utica* requires this Court to review the decision by the Settlement Officer for an abuse of discretion. "[W]ithout a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS, as contemplated by Congress, the judiciary will inevitably become involved on a daily basis with tax enforcement details that judges are neither qualified, nor have the time, to administer." *Living Care Alternatives of Utica,* 411 F.3d at 631.

Based on the administrative record, the Court finds no such abuse of discretion in the present case. Carnick is essentially contending that the settlement offer of $45,216.00 in the IRS Notice of Determination is not feasible because it rests on an erroneously low estimate of his monthly expenses. Carnick further contends that the Settlement Officer abused his discretion by failing to exercise discretion in allowing actual expenses instead of national standard expenses. Before the telephone CDP conference, Carnick submitted an offer in compromise that included

*his* calculation of monthly expenses. "In a CDP hearing, taxpayers are expected to provide 'all relevant information requested by [the IRS Office of] Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.'" *Olsen v. United States*, 414 F.3d 144, 151 (1st Cir. 2005) (quoting Treas. Reg. § 301.6330-1(e)(1) (2004)). But Carnick failed to provide documentation necessary for the Settlement Officer to make an informed decision about how much Carnick could pay on the tax liability. Carnick defended his initial offer in compromise on the basis of his inability to pay, claiming that he previously filed for bankruptcy and had increased monthly expenses because of financial difficulties. Thus, the focus was on Carnick's ability to pay, making it reasonable for the Settlement Officer to inquire into Carnick's specific circumstances and request additional documentation to substantiate Carnick's claimed expenses.

In a letter dated March 7, 2005, the Settlement Officer requested information that Carnick did not provide before the telephone CDP conference. Specifically, the Settlement Officer requested the balance owed on Carnick's vehicle, additional documentation regarding Carnick's life insurance policy, documentation substantiating Carnick's child's learning disability and educational expenses, the balance of all legal fees owed, and student loan balances. In letters dated March 14, 2005 and March 29, 2005, the Settlement Officer stated that he had considered the additional information provided by Carnick and even adjusted some of the expenses based upon the updated information. After considering these adjustments, the Settlement Officer reduced the amount he thought Carnick could pay by nearly $7,000.00. But Carnick was still unhappy and requested that the Settlement Officer review the entire file again. In a letter dated April 12, 2005, the Settlement Officer indicated that he reviewed the entire file once again, stated that Carnick had not demonstrated a financial hardship, and concluded that he

could not reduce the amount any further.

In his answer to Defendant's motion, Carnick argues that he proposed a third offer in compromise of $22,000.00 but that the Settlement Officer never specifically rejected it. On June 23, 2005, the Settlement Officer received a phone call from Carnick's attorney. The attorney stated that Carnick had the ability to pay $11,000.00 within 90 days and another $11,000 within 6 months. After this conversation, the Settlement Officer noted the following in the case activity records:

> I reviewed the IET and AET. The AET does not change since that is zero. As it stands now tp shows ability to pay $942 a month. Looking at the exspenses [sic] claimed as to what was allowed the major difference is with the National Standard Exp. I know one of their children has to go to a special school. It is possible that the tps have special food and supplies that are needed. I need to see why the National Standard Exp is so high. [Defendant's Motion, Ex. 1]

It is clear that the Settlement Officer considered the offer of $22,000 and still believed that Carnick had the ability to pay over $45,000.00. The Settlement Officer's notes show that he needed additional information to make an informed decision. He was especially concerned about Carnick's calculation of national standard expenses. However, the Settlement Officer never received information explaining or supporting Carnick's calculations.

In the middle of July 2005, Carnick's attorney contacted the Settlement Officer and requested two additional weeks to gather and review financial information. The Settlement Officer provided a deadline of August 4, 2005, and Carnick's attorney stated that he would have the new information by that date to substantiate the expense calculations. But neither Carnick nor his attorney contacted the Settlement Officer or forwarded the information at any time before the Settlement Officer issued the Notice of Determination. With a lack of documentation to substantiate Carnick's expense calculations, the Settlement Officer relied upon the national

standard expenses and issued the Notice of Determination on August 25, 2005.

This series of correspondence between the Settlement Officer and Carnick's attorney makes it abundantly clear that the Settlement Officer was doing everything in his power to strike a reasonable compromise with Carnick. The Settlement Officer even reduced the amount he believed Carnick could pay by adjusting some of the monthly expenses. Carnick, on the other hand, repeatedly required additional time to gather documentation but never fully cooperated with the Settlement Officer's requests. Carnick had nearly five months to substantiate his expense calculations in the initial offer in compromise. But he failed to do so. It was at this time that the Settlement Officer finally made a decision to end the correspondence and issue a determination. This Court has stated that it "cannot say that the Appeals Office abuses its discretion by granting a taxpayer a limited opportunity to provide post-hearing documentation in support of a challenge to a proposed repayment plan, and then going forward with this plan when the taxpayer fails to take advantage of this opportunity." *Render v. IRS*, 389 F.Supp.2d 808, 811 (E.D. Mich. 2005). At a minimum, Carnick should have been able to gather and submit the appropriate information within a short period of time after the telephone CDP conference. Indeed, Carnick was given several opportunities to do so but failed to provide the Settlement Officer with sufficient documentation to justify higher monthly expenses or information that reflected his inability to pay. The Court finds no abuse of discretion under these circumstances.

Carnick believes that this Court should remand this matter to the Settlement Officer with the specific direction that the Officer use discretion in determining whether expenses in excess of national standards are allowable. In support of this argument, Carnick cites the Internal Revenue Manual at §5.15.1.3(5), which provides that "a taxpayer is not required to substantiate expenses that are categorized as national standards *unless they exceed the standard*." [emphasis added]

Carnick apparently ignores the highlighted language because his actual expenses *exceeded* the national standard amount.  Thus, Carnick *was* required to substantiate his higher calculations but failed to comply with the Settlement Officer's numerous requests for additional information.  It is clear from the record that the Settlement Officer did exercise his discretion in reviewing Carnick's offers in compromise.  The Officer made his determination based on the information made available to him and this Court will not substitute its judgment for that of someone more experienced and trained in tax assessment.  As Defendant points out, the Settlement Officer was willing to review any substantiation of Carnick's actual expenses.  However, he had nothing to review.

Finally, Carnick briefly argues that the Settlement Officer should have subtracted the negative value of his vehicle from the settlement offer of $45,216.00.  But as Defendant correctly asserts, this argument is without merit because the "Worksheet to Calculate an Offer Amount" specifically states that if a taxpayer's asset has a negative value, then zero must be entered on the form.  Furthermore, the primary dispute in this case is over the calculation of national standard expenses.

This Court has pointed out that the IRS does not abuse its discretion by rejecting an offer in compromise "on the basis that the taxpayer has the means to pay a greater amount (or all) of [his] liability under a suitable repayment plan[.]" *Render*, 389 F.Supp.2d at 813.  "[T]he decision to reject or accept an offer to compromise . . . is left to the discretion of the Secretary." Treas. Reg. § 301.7122-1(c)(1) (2004); *see also* 26 U.S.C. § 7122 (2000) ("The Secretary may compromise any civil or criminal case arising under the internal revenue laws . . . .")  A thorough review of the administrative record leads the Court to conclude that the Settlement Officer did not abuse his discretion in rejecting Carnick's offers in compromise.

**IV. Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's March 27, 2006 Motion to Affirm is GRANTED.

                                             s/Gerald E. Rosen
                                             Gerald E. Rosen
                                             United States District Judge

Dated: October 25, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 25, 2006, by electronic and/or ordinary mail.

                                             s/LaShawn R. Saulsberry
                                             Case Manager